## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:20-CR-30088-RAL |
| Plaintiff, | |
| | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |
| vs. | |
| ANTHONY STORY, | |
| Defendant. | |

Tribal officers went into a camper, with the permission of the owner of it, and found Anthony Story sleeping next to a light bulb and an open makeup bag with methamphetamine in it. In a pretrial motion, Story seeks to suppress the search and seizure of drug evidence the officers discovered inside the camper and statements he made outside it and afterward at the jail. Because the officers lawfully entered the camper with consent and they complied with the edicts of *Miranda*, the Court recommends that Story's suppression motion be denied.

## BACKGROUND

On August 14, 2019, Cheyenne River Sioux Tribe Law Enforcement Services (CRSTES) Sergeant Jeremy Reede and Officer Cody Norman attempted to arrest Nicole Ducheneaux on a federal warrant. They contacted Shirley Ducheneaux, Nicole's mother, and quizzed her about Nicole's whereabouts. Shirley told the officers that

Nicole might be in a camper, parked behind Shirley's house, if Nicole's vehicle was around and the padlock to the camper was off.

Over the noon hour, Sergeant Reede and Officer Norman traveled to Shirley's residence. There, they noticed that Nicole's car was in the driveway and that the camper had no padlock on it. Hearing movement and a voice coming from inside the camper, Reede knocked and announced Nicole's name. Juan Fernandez, Nicole's stepfather, approached the officers and Reede told him they had a federal arrest warrant for Nicole. Fernandez knocked on a door to the camper and hollered for Nicole to come out. Within a minute or two, Nicole opened the door, stepped out (with a baby in her arms), and closed the door behind her. Other officers then arrested Nicole on the warrant and transported her to jail. As she was being taken away, Nicole said her cousin was in the camper.

Sergeant Reede asked if Fernandez owned the camper and if Reede and Officer Normal could search it. Fernandez responded that he did and that the officers could "go ahead [and] go in."[1] Reede entered the camper by himself and found Story sleeping in a bed with his head next to a light bulb, an item Reede believed was drug paraphernalia (a smoking device). On an abutting nightstand, Reede observed an unzipped makeup bag. Inside, Reede could see clear plastic baggies with a crystal-like substance – later determined to be methamphetamine – in them. At Reede's request,

---

[1]Mot. Hrg. Tr. 9-10 (Feb. 16, 2021).

Officer Norman entered the camper, guided Story outside it, and placed him under arrest.  While being escorted to the patrol car and with no prompting, Story inquired whether he could work or cooperate with law enforcement, or uttered something to that effect.  Reede informed Story they could talk further about this at the jail.

Sergeant Reede and Officer Norman went back to and entered the camper a second time.  In their search of it, they found, and seized, wallets, money, and more drug paraphernalia.

Sergeants Reede and Ramon Marrufo interviewed Story in a room at the jail. Before doing so, Reede gave Story a *Miranda* advisement.  Story acknowledged he understood his rights and agreed to speak with the officers.  When asked about the contraband recovered from the camper, Story denied any of it was his.

Ultimately, a federal grand jury indicted Story on a single count of possession with intent to distribute a controlled substance (methamphetamine).  Story moved to suppress the evidence seized from the search of the camper and his statements on Fourth Amendment and *Miranda* grounds.  The Court held an evidentiary hearing on the motion at which it received two exhibits into evidence (a partial recording and transcript of the jail interview) and took in-person testimony from Fernandez, Sergeant Reede, and Officer Norman.

### DISCUSSION

**A. Standing**

A defendant must have "standing" to invoke the exclusionary rule.[2]  To obtain relief under the rule, the defendant must show that he had a legitimate expectation of privacy in the invaded place.[3]

Story had a lawful right to be in the camper on August 14.  As an overnight guest and occupant at the time, he is a proper party to assert a Fourth Amendment claim and to seek the remedy of exclusion.[4]  The government concedes that Story has standing to contest the warrantless entry and search of the camper and the evidence seized from it.[5]

**B. Consent**

Story asserts that the warrantless entry and search of Fernandez's camper violated the Fourth Amendment.  As he sees it, Sergeant Reede and Officer Norman were required, but failed, to obtain a warrant before entering and searching the camper.

---

[2]*See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

[3]*See Minnesota v. Olson*, 495 U.S. 91, 95 (1990).

[4]*See Olson*, 495 U.S. at 96-100; *see also United States v. Dickson*, 64 F.3d 409, 410 (8th Cir. 1995) (testimony that the defendant "had been staying in the apartment in question 'for a couple of days' as a guest," alone sufficient to establish standing); *State v. Tullous*, 2005 S.D. 5, ¶16, 692 N.W.2d 790, 794 (the defendant had standing, as he "regularly stayed overnight" and at times baby-sat for a child in the house); *see generally* 6 Wayne R. LaFave, *Search and Seizure*, §11.3(b) at pp. 190-94 & nn. 101-08 (6th ed. 2020).

[5]*See* Mot. Hrg. Tr. 3-4.

The general prohibition against the entry of a home, whether to make an arrest or search for specific objects,[6] does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises."[7]  Common authority exists where there is "mutual use of the property by persons generally having joint access or control for most purposes[.]"[8]

A warrantless entry and search is likewise justified when an officer reasonably relies on a third party's demonstration of apparent authority, even if that party lacks common authority.[9]  The test is an objective one:  "Would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?"[10]

---

[6]*See Payton v. New York*, 445 U.S. 573 (1980); *Johnson v. United States*, 333 U.S. 10 (1948).

[7]*Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see also United States v. Matlock*, 415 U.S. 164, 171 (1974) (when the prosecution seeks to justify a warrantless search by voluntary consent, it is not limited to prove that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over, or sufficient relationship to, the premises or effects sought to be inspected).

[8]*Rodriguez*, 497 U.S. at 181 (*quoting Matlock*, 415 U.S. at 171, n. 7).

[9]*See Rodriguez*, 497 U.S. at 185-86; *United States v. Hudspeth*, 518 F.3d 954, 958 (8th Cir. 2008) (*en banc*).

[10]*Rodriguez*, 497 U.S. at 188; *see also United States v. Almeida-Perez*, 549 F.3d 1162, 1170-71 (8th Cir. 2008) (explaining that even where police are mistaken as to a third party's actual authority, the search is legal if the circumstances lead the police

(continued. . .)

5

Consent may be express or implied.[11]  The precise question is not whether the individual consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented.[12]

Here, besides being the sole owner of the camper, Fernandez had a key to the padlock on it.[13]  He also had joint access to the camper and periodically went into and checked on it.[14]  Although Nicole used the camper from time to time, she did so rent free and not as a paying tenant.[15]

Regardless, Fernandez had apparent authority to consent to the entry and search of the camper.  He lived in a house, on the property and close to the camper, with Nicole's mom, Shirley.[16]  He said he owned the camper and appeared to be familiar with it.[17]  And he knocked on the door to the camper, called for Nicole, and succeeded

---

reasonably to believe that a third party with common authority has consented).

[11]*See United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016); *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006).

[12]*See United States v. Williams*, 521 F.3d 902, 906-07 (8th Cir. 2008); *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

[13]*See* Mot. Hrg. Tr. 6-8, 16-17, 19, 27.

[14]*See id*. at 8.

[15]*See id*. at 7-8.

[16]*See id*. at 6-7, 11-12, 15, 19-20, 31-33.

[17]*See id*. at 16-18, 27.

in getting her to come out.[18]  Under these circumstances, it was reasonable for Sergeant Reede and Officer Norman to believe that Fernandez could, and validly did, consent to the entry into the camper and to the search of it.[19]

Sergeant Reede and Officer Norman did not "intentionally bypass" seeking consent from Nicole.  Despite being present, whatever privacy interest Nicole had in the camper, was not superior, or even equal, to that of Fernandez.[20]

Fernandez testified that he consented "voluntarily."[21]  The record supports this testimony and shows, by a preponderance of the evidence, that Fernandez's consent was the product of a free and unconstrained choice and not the result of duress or coercion.[22]

Fernandez expressly consented to Sergeant Reede and Officer Norman entering into the camper and searching the interior of it.  He had actual, common, and apparent authority over the camper and willingly consented to the entry and search without any

---

[18]*See id*. at 9, 13-14, 24-25, 55.

[19]*See Rodriguez*, 497 U.S. at 186-88.

[20]*See United States v. Bradley*, 869 F.2d 417, 419 (8th Cir. 1989); *compare with United States v. Impink*, 728 F.2d 1228, 1234 (9th Cir. 1984).

[21]Mot. Hrg. Tr. 20.

[22]*See* Mot. Hrg. Tr. 9-10, 20, 48; *United States v. Willie*, 462 F.3d 892, 898 (8th Cir. 2006) (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 227, 248 (1973)).

threats, persuasion, strong-arm tactics or objection (from anyone).[23] Because the entry and search were consensual, the officers had a legitimate basis for being in the camper and seizing contraband from it.[24]

## C. *Miranda*

Story also maintains that his post-arrest statements, outside the camper and at the jail, were the product of unwarned custodial interrogation, a sketchy *Miranda* advisement, and an invalid waiver.   The statements should be excluded as trial evidence, he says, because they were unlawfully obtained.

---

[23]*See* Mot. Hrg. Tr. 10, 20, 48, 56.

[24]*See United States v. Hinkle*, 456 F.3d 836, 840-41 (8th Cir. 2006); *United States v. Brokaw*, 985 F.2d 951, 953-54 (8th Cir. 1993); *see also United States v. Evans*, 27 F.3d 1219, 1230 (7th Cir. 1994) (father could consent to the search of his own garage, which his son was allowed to use the bay of, where father had unobstructed access to the bay when the door to it was unlocked and he did not have to ask his son's permission to enter); *United States v. Wright*, 564 F.2d 785, 790 (8th Cir. 1977) (defendant's mother, who had ownership and control of the premises, could properly consent to a search of the same); *United States v. McMurtrey*, 534 F.2d 1321, 1322 (8th Cir. 1976) (father, who had a house on the farm he continued to operate, could consent to a search of a shed near the house he had access to and did not rent to his son); *United States v. Deloney*, No. 11-00098-01-CR-W-FJG, 2012 WL 2952764 at **3-5 (W.D. Mo. June 20, 2012), *R&R adopted*, 2012 WL 2952767 (W.D. Mo. July 17, 2012), *aff'd*, 524 Fed. App'x 310 (8th Cir. 2013) (defendant's ex-girlfriend had common and apparent authority over the trailer and could consent to the entry and search of it); *State v. Wagster*, 361 So.2d 849, 854-55 (La. 1978) (upholding search upon the father's consent of a van purchased by his 19-year-old son where the van was without wheels and parked in the backyard of the family home and mother and father entered with the son's consent whenever it was not locked).

## 1. Volunteered Statements

Under *Miranda*, the government is prohibited from using statements made during custodial interrogation unless the suspect has been previously advised of his Fifth Amendment rights.[25] But because "[v]olunteered statements of any kind are not barred by the Fifth Amendment," *Miranda* concerns do not arise without police interrogation.[26] Interrogation includes not only express questioning, but also words or conduct that an officer "should know are reasonably likely to elicit an incriminating response from the suspect."[27] *Miranda* does not forbid the prosecution from using, as evidence at trial, volunteered or spontaneous statements made during a conversation not initiated by an officer.[28]

Story's custodial statement – Can I work or cooperate with you guys? – was made spontaneously, without interrogation,[29] and in conformity with *Miranda*. Neither Sergeant Reede nor Officer Norman questioned Story or tried to draw out this or any other statements from him. Because Story's statement (whether inculpatory or not) was

---

[25]*See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[26]*Id*. at 478.

[27]*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

[28]*See United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005).

[29]*See* Mot. Hrg. Tr. 29, 56, 66-67.

volunteered and unsolicited, it fell outside *Miranda's* protection[30] and is admissible as substantive evidence at trial.[31]

### 2. Sufficiency of Warnings

Before any questioning at the jail began, Sergeant Reede and Story engaged in this exchange:

> SERGEANT REEDE:  Of course, I have to read you your rights because you are in jail, k?
>
> STORY:  I have a right to an attorney, blah, blah, blah, that [indiscernible].
>
> SERGEANT REEDE:  Yeah, I'll say it for you.  You have the right to remain silent.  Anything you say can and will be used against you in court.  You have the right to an attorney.  If you can't afford an attorney, one will be appointed by the courts.  Do you understand those?
>
> STORY:  Yes, I do.
>
> SERGEANT REEDE:  Okay.  So do you want to talk to me about the [indiscernible].[32]

Story then participated in an interview with Reede and Sergeant Marrufo.  Story now complains that Reede failed to specifically warn him of his right to counsel before and during questioning.  This failure, he argues, violated *Miranda* and requires that his statements to the officers be suppressed.

---

[30]*See Miranda*, 384 U.S. at 478; *Chipps*, 410 F.3d at 445; *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.7(d) (4th ed. 2015 & 2019-20 Update).

[31]*See United States v. Waloke*, 962 F.2d 824, 829 (8th Cir. 1992).

[32]Mot. Hrg. Ex. 1, 00:29-00:50 (Feb. 16, 2021).

Prior to questioning, a suspect "must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."[33]  The Supreme Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision" and "no talismanic incantation [is] required to satisfy its strictures."[34]  The inquiry is simply whether the "warnings reasonably 'conveyed to [the] suspect his rights as required by *Miranda*.'"[35]

In *United States v. Caldwell*,[36] the Eighth Circuit construed an almost identical warning as the one given to Story.  Caldwell argued the general warning he received – that "[y]ou have a right for an attorney" – was flawed because it only generally warned him of his right to an attorney.[37]  Because Caldwell did not raise, and preserve, the adequacy of his *Miranda* warnings, the Eighth Circuit decided the issue under a plain error standard of review.[38]  Analyzing Supreme Court precedent in some depth,[39] the appeals court found Caldwell's case distinguishable because it did not suffer from the

---

[33]*Miranda*, 384 U.S. at 444.

[34]*Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (citations omitted).

[35]*Florida v. Powell*, 559 U.S. 50, 60 (2010) (*quoting Duckworth*, 492 U.S. at 203).

[36]954 F.2d 496, 501 (8th Cir. 1992).

[37]*Id*. at 502.

[38]*Id*. at 500.

[39]*See id*. at 501-04.

failings discussed in that precedent, namely, linking the right to appointed counsel to a future point in time after interrogation.[40]   The court then held that "the warning provided does not rise to the level of plain error" and cited several supporting cases from other Circuits.[41]

Courts in the Second, Third, Fourth, and Seventh Circuits have reached similar conclusions.[42]   Their reasoning and conclusions are instructive and in harmony with *Caldwell* – a long-standing, and still binding, case.[43]

*Miranda* does "not strictly require that a [suspect] be explicitly advised of his right to an attorney before and during questioning."[44]   While a suspect must be

---

[40]*See id*. at 502, 504.

[41]*Id*. at 503.

[42]*See United States v. Nash*, 739 Fed. App'x 762, 764-65 (4th Cir. 2018) (the statement, "'[y]ou have the right to an attorney' . . . communicated to [the defendant] that his right to an attorney began immediately and continued forward in time without qualification"); *United States v. Warren*, 642 F.3d 182, 185-87 (3d Cir. 2011) (a general warning of the right to an attorney, without an express warning of the right to the presence of an attorney during interrogation, satisfied *Miranda*); *United States v. Burns*, 684 F.2d 1066, 1074-75 (2d Cir. 1982) (failure to expressly tell the defendant he could have an attorney present during questioning did not render warnings constitutionally deficient); *United States v. Adams*, 484 F.2d 357, 361-62 (7th Cir. 1973) (warnings that defendant had the right to remain silent, right to counsel, and court-appointed counsel were adequate).

[43]*See Caldwell*, 954 F.2d at 501-04; *United States v. Free*, 8:19-CR-337, 2020 WL 7130601 at **2-4 (D. Neb. July 27, 2020), *R&R adopted*, 2020 WL 6044125 (D. Neb. Oct. 13, 2020).

[44]*Id*. at 502.

provided a continuous opportunity to exercise his *Miranda* rights, nothing in the *Miranda* decision necessitates that the suspect be informed he can exercise those rights at any time during the interview.[45]  The *Miranda* warnings administered to Story were adequate under settled case law of this Circuit.[46]

The *Long* case[47] Story cites, in support of suppression, is inapposite.  The warning in that case differed from the one Story received.  Long's warning failed to inform him that he had the right to appointed counsel.  "At most, Long was told he didn't have to say anything and that he could have a lawyer."[48]  The court pointed out that there was no further admonishment that Long could stop talking at any time, that he had the right to have counsel present, and that he could have a court-appointed counsel if he could not afford one.[49]  The thrust of the decision dealt with the failure to inform Long of his

---

[45]*See United States v. Wright*, Criminal No. 07-104 (JRT/AJB), 2008 WL 141772 at *3 (D. Minn. Jan. 14, 2008).

[46]*See Caldwell*, 954 F.2d at 501-04; *see also Rhines v. Young*, 899 F.3d 482, 487 (8th Cir. 2018) (warnings that failed to inform the defendant that he had the right to an attorney before and after questioning were not deficient under the "proper Supreme Court standard" and "relevant" Eighth Circuit "precedent"), *cert. denied*, 139 S.Ct. 1567 (2019); *but see Bridgers v. Dretke*, 431 F.3d 853, 859-60 (5th Cir. 2005) (recognizing the split among circuits on whether the warning must explicitly provide that a suspect is entitled to the presence of counsel during interrogation); *State v. King*, No. 2019-KK-01332, 2020 WL 1671536 at **2-3 (La. April 3, 2020) (discussing the federal circuit conflict on the issue).

[47]*See South Dakota v. Long*, 465 F.2d 65 (8th Cir. 1972).

[48]*Id*. at 70.

[49]*See id*.

right to appointed counsel.[50]  *Long* does not control the issue now at hand, which the Eighth Circuit definitively resolved in *Caldwell* and has never overruled or modified.

The Court recognizes that the plain error standard used in *Caldwell* means that the same general rights advisement may not withstand stricter scrutiny where the issue is properly preserved for appellate review.  But the Court finds that the warnings Sergeant Reede provided to Story, and Story's own familiarity with his right to an attorney, make this a stronger case than *Caldwell*.  Story appeared to understand his right to have an attorney present during questioning.  When told he had to have his rights read to him because he was in jail and asked if that was okay, Story seemed to know all about them, including his right to an attorney[51] (knowledge he presumably gained from his experiences with the criminal justice system).[52]  What's more, Reede's advisement was not misleading, did not suggest a false limitation of Story's right to counsel, and did not link that right to a future point in time after questioning.[53]  Taken as a whole, the advisement "touched all the bases required by *Miranda*" and reasonably

---

[50]*See id.*

[51]*See* Mot. Hrg. Ex. 1, 00:29-00:35.

[52]*See* Dkt. No. 8 at 2-10 (detailing Story's lengthy criminal history which spans 28 years and includes the commission of seven separate felony offenses and five more felony charges pending in two different state jurisdictions).

[53]*See Caldwell*, 954 F.2d at 502 ("If there was a deficiency in the warning, it is in the ambiguity of the warning, not that the warning actively misled [the defendant] by suggesting a false limitation of his right to counsel.")

informed Story of his right to have an attorney present during questioning, court-appointed or otherwise.[54]

### 3. Waiver

Any claim that Story did not validly waive his *Miranda* rights – either because he could not give up what he was not informed of in the first place or because of an inaudible response to Sergeant Reede's warnings – is likewise unavailing. As already discussed, Reede's advisement was good enough to comply with the dictates of *Miranda*. Story's continued answers to Reede's questions were a course of conduct indicating waiver. If Story wanted an attorney, he could have asked for one or invoked his *Miranda* rights and ended the interrogation. And there is no evidence that Story's statements were coerced. The recording of the interview and Reede's testimony (which the Court found to be credible), show that Story understandingly waived his right to counsel and other rights and chose to speak with Reede and Sergeant Marrufo.[55]

---

[54]*See Duckworth*, 492 U.S. at 203.

[55]*See Berghuis v. Thompkins*, 560 U.S. 370, 383-87 (2010); *North Carolina v. Butler*, 441 U.S. 369, 372-76 (1979); *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016); *United States v. Brown*, 664 F.3d 1115, 1118 (7th Cir. 2011); *see also United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991) ("waiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights"); *Free*, 2020 WL 7130601 at **2-4 (the defendant validly waived his rights after being given warnings that complied with *Miranda*); *United States v. Nelson*, No. 12-CR-2024-LLR, 2013 WL 1899832 at **2-6 (N.D. Iowa May 7, 2013) (defendant adequately informed of his *Miranda* rights and waived them).

## D.  Fruit of the Poisonous Tree

Undeterred, Story contends that the statements he made after being arrested stem from Sergeant Reede and Officer Norman's illegal entry and search of the camper and must be suppressed under the exclusionary rule.[56]  But because there was no Fourth Amendment violation or "poisonous tree" for any "tainted fruit" to grow or fall from, Story's statements are fully admissible against him at trial.[57]

## CONCLUSION

Sergeant Reede and Officer Norman's entry into and search of the camper were consensual.  And Story's statements, while in custody, were not in response to custodial interrogation.  Nor were they the consequence of a deficient *Miranda* advisement or an ineffective waiver of rights.  No basis, therefore, exists to exclude the items seized from the camper, or Story's post-arrest statements, under the Fourth Amendment, *Miranda,* or as "tainted fruit."  Thwarted by the facts and law, Story cannot succeed on his suppression motion.

---

[56]*See Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

[57]*See United States v. Crisolis-Gonzalez*, 742 F.3d 830, 838 (8th Cir. 2014); *United States v. Hessman*, 369 F.3d 1016, 1023-24 (8th Cir. 2004); *see also United States v. Brave Bird*, 3:16-CR-30061(01)-RAL, 2016 WL 6603170 at *6 (D.S.D. Nov. 8, 2016) (because search of the residence was consensual, statements defendant made to a tribal agent later on were not subject to exclusion under the fruit of the poisonous tree doctrine).

## RECOMMENDATION

Based on the authorities and legal analysis discussed in this report and the record now before the Court, it is hereby

RECOMMENDED that Story's Motion to Suppress,[58] as supplemented,[59] be denied in all respects.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[60] Unless an extension of time for cause is later obtained,[61] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[62]  Objections must "identify[] those issues on which further review is desired[.]"[63]

---

[58]*See* Dkt. No. 27.

[59]*See* Dkt. No. 37.

[60]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[61]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[62]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[63]*Arn*, 474 U.S. at 155.

Dated this 2nd day of March, 2021, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**