UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY STORY,<br><br>Defendant. | 3:20-CR-30088-RAL<br><br>OPINION AND ORDER ADOPTING REPORT & RECOMMENDATION AND DENYING MOTION TO SUPPRESS |

Anthony Story was charged with a federal drug crime after police found methamphetamine in a camper where he was staying as an overnight guest. Story moved to suppress the evidence seized from the camper and post-arrest statements he made to law enforcement. Doc. 27. Magistrate Judge Mark A. Moreno held an evidentiary hearing and issued a report and recommendation recommending that Story's motion be denied. Doc. 40. Judge Moreno found that the camper's owner had, at the very least, apparent authority to consent to the officers' search of the camper and that the Miranda[1] warnings Story received were sufficient. Doc. 40. Story has now objected to the report and recommendation. Doc. 42. Having conducted a de novo review of those portions of the report and recommendation to which Story objects, this Court adopts the report and recommendation.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

1

I.     Facts[2]

On August 14, 2019, Cheyenne River Sioux Tribe Law Enforcement Services Sergeant Jeremy Reede and Officer Cody Norman set out to arrest Nicole Ducheneaux on a federal[3] warrant. T. 23. Unable to find Nicole at her boyfriend's or her mother Shirley Ducheneaux's house, the officers contacted Shirley at the hotel where she works. T. 23, 32, 57. Shirley said that if Nicole's vehicle was around, she was probably either in Shirley's house or a camper parked behind it. T. 23. She explained that if the padlock on the camper was off, Nicole was likely in the camper. T. 23.

Sergeant Reede and Officer Norman arrived at Shirley's residence around noon. T. 11–12, 57. They saw Nicole's car in the driveway and no padlock on the camper. T. 24. Hearing movement and voices from inside the camper, Sergeant Reede knocked and called for Nicole. T. 24. Juan Fernandez, Nicole's stepfather, approached the officers and Sergeant Reede told him they had a federal arrest warrant for Nicole. T. 25. Fernandez knocked on the camper's door and told Nicole to come out. T. 9, 25. Nicole exited the camper within a few minutes, carrying a child, and shut the camper door behind her. T. 25–26, 35–36. Other officers then arrested Nicole and took her to jail. T. 26, 36. As she was leaving, Nicole said that her cousin was asleep in the camper.[4] T. 16, 26, 36.

Sergeant Reede asked Fernandez whether he owned the camper and whether the officers could search it. T. 26–28. Fernandez replied that he owned the camper, that nobody else was

---

[2]This Court adopts Judge Moreno's factual findings but briefly sets forth those facts relevant to Story's objections.
[3]Both officers were assigned to the FBI's Northern Plains Safe Trails Drug Enforcement Task Force. T. 23; T. 54.
[4]Story objects to Judge Moreno's factual findings to "clarify" two details, one being that Nicole told officers that her cousin was sleeping inside the camper. Doc. 42 at 1.

2

supposed to be inside, and that the officers could "go ahead [and] go in." T. 9–10, 16–17, 26–28. Sergeant Reede entered the camper and found Story asleep in a bed with what appeared to be a methamphetamine smoking device laying near his head. T. 28, 38–39, 42. An unzipped makeup bag lay on an abutting nightstand. T. 28–29, 42, 49. Inside, Sergeant Reede could see clear plastic baggies containing a white crystal-like substance that was later determined to be methamphetamine. T. 29, 42, 50.

Officer Norman entered the camper, guided Story outside it, and placed him under arrest. T. 28, 39–40, 56, 65. While being walked to the patrol car, Story, without any prompting, asked whether he could work or cooperate with law enforcement. T. 29. Sergeant Reede replied that they could talk more about this at the jail. T. 29.

Later that day, Sergeants Reede and Ramon Marrufo interviewed Story in a room at the jail. T. 30, 45, 52. Before any questioning occurred, Sergeant Reede and Story engaged in the following exchange:

> **Sergeant Reede:** Of course, I have to read you your rights because you are in jail, k?
> **Story:** I have a right to remain silent, right to an attorney, blah, blah, blah, that [unintelligible].
> **Sergeant Reede:** Yeah, I'll say it for you. You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to an attorney. If you can't afford an attorney, one will be appointed by the courts. Do you understand those?
> **Story:** Yes, I do.
> **Sergeant Reede:** Okay. So, do you want to talk to me about the [unintelligible]?

Ex. 1 at 00:29–00:50. Story agreed to speak with the officers. T. 30, 51. When asked about the evidence recovered from the camper, Story denied any of it was his. Ex. 1.

Story now objects to the report and recommendation, arguing that Fernandez did not have authority to consent to a search of the camper, that Story's statement outside the camper should be

suppressed as fruit of the poisonous tree, and that he did not receive adequate Miranda warnings before the jail interview. Doc. 42.

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)).

## II. Analysis

### A. Sergeant Reede had consent to search the camper.

Story argues that Judge Moreno erred by concluding that Fernandez could consent to a search of the trailer. He makes essentially the same arguments he made before Judge Moreno. Doc. 28 at 4–6; Doc. 42 at 2–4. As explained below, this Court agrees with Judge Moreno that Fernandez had at least apparent authority to consent to the officers' search of the camper.

Voluntary consent is an exception to the Fourth Amendment's requirement that police need a warrant to search a home. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Police performing a search may rely on a third party's consent if that party has either "actual" or "apparent" authority. United States v. Clutter, 674 F.3d 980, 983 (8th Cir. 2012). A party has actual authority to consent if he possesses common authority[5] over, or sufficient relationship to, the place being searched. United States v. Matlock, 415 U.S. 164, 171 (1974). Apparent authority exists when the facts

---

[5] Common authority exists where there is "mutual use of the property by persons generally having joint access or control for most purposes." Rodriguez, 497 U.S. at 181 (citation omitted).

4

available to the officer at the time would warrant a person of reasonable caution to believe that the consenting party had authority over the premises to be searched. Rodriguez, 497 U.S. at 188. The government bears the burden of showing consent to search. United States v. James, 353 F.3d 606, 613 (8th Cir. 2003).

There is strong evidence that Fernandez had actual authority to consent to the search of the camper. He was the sole owner of the camper, decided to place a padlock on it, and had a key to the padlock. T. 6–8, 16–17, 19. He also had joint access to the camper, entering the camper occasionally to check on it. T. 8. Although Story argues that Nicole "resided" in the camper, the record does not bear this out. Rather, Fernandez testified that Nicole stayed in Shirley's house, where Nicole had her own room, "most of the time." T. 7. Nicole only stayed in the camper "every once in a while," and did so without paying rent. T. 7–8; see also T. 14. Fernandez also explained that Nicole's child never spent the night with her in the camper. T. 14. Courts have found actual authority on similar facts. See United States v. Hinkle, 456 F.3d 836, 840 (8th Cir. 2006) (concluding that a woman had actual authority to consent to the search of a locked trailer located on her property because in addition to being the owner of the property on which the trailer was located, she had joint access to the trailer as shown by her possession of the trailer's keys and her knowledge of what the keys were for and how to use the corresponding locks); United States v. Evans, 27 F.3d 1219, 1230 (7th Cir. 1994) (holding that father who owned a garage but allowed his son to operate his business out of a bay therein had common authority to consent to a search of the garage where father paid all the utilities for the garage, had unobstructed access to the bay when the door to it was unlocked, and did not have to ask his son's permission to enter the bay).

In any event, the facts available to the officers would warrant a person of reasonable caution to believe that Fernandez had authority to consent to a search of the camper. When Fernandez

5

consented, Sergeant Reede knew that Fernandez owned the camper and lived in a house nearby on the same property. T. 16–17, 26–27. Beyond that, Fernandez's actions suggested that he had control over the camper; Fernandez had successfully ordered Nicole to exit the camper and had told Sergeant Reede that no one else was supposed to be inside it. T. 9, 13–14, 24–28. Sergeant Reede's conclusion that Fernandez had authority to consent was at least as reasonable as the conclusion the Eighth Circuit upheld in United States v. Brokaw, 985 F.2d 951 (8th Cir. 1993). In Brokaw, the owner and resident of a cabin consented to a search of a nearby camper where the defendant and his girlfriend were sleeping. Id. at 952. The cabin owner told police that he owned the camper and the camper was on his land. Id. at 954. The Eighth Circuit held that it was objectively reasonable for the officers to believe that the cabin owner had authority to consent to the search of the camper. Id. As in Brokaw, the police here had an objectively reasonable belief that they had obtained valid consent to search a camper. Story's objection to the contrary is overruled.

### B. Story's statement outside the camper is admissible.

Story argues that his statement outside the camper should be suppressed because it is the fruit of an illegal search of the camper. See Wong Sun v. United States, 371 U.S. 471 (1963). Because the search of the camper did not violate the Fourth Amendment, Story's fruit-of-the-poisonous-tree argument fails.

### C. Story received adequate Miranda warnings.

Story argues that his statements at the jail are inadmissible because Sergeant Reede did not adequately inform him of his rights under Miranda. Most anyone who has watched a police drama on television could likely name at least one of the four warnings required by Miranda. They are: (1) you have the right to remain silent; (2) anything you say can be used against you in a court of

6

law; (3) you have the right to the presence of an attorney; and (4) if you cannot afford an attorney one will be appointed for you before any questioning if you so desire. Miranda, 384 U.S. at 479. Story's argument concerns the third warning. The Supreme Court has said that the right to an attorney includes both "the right to consult with a lawyer and to have the lawyer with [you] during interrogation." Id. at 471. As noted above, Sergeant Reede told Story that "[y]ou have the right to an attorney. If you can't afford an attorney, one will be appointed by the courts." Story argues that this warning did not adequately inform him of his right to have an attorney present during questioning.

Of course, police officers need not use the precise language of the Miranda decision for a warning to be valid. Duckworth v. Eagan, 492 U.S. 195, 202 (1989); California v. Prysock, 453 U.S. 355, 359 (1981) (per curiam). Rather, a warning is sufficient if it "reasonably convey[s] to a suspect his rights as required by Miranda." Florida v. Powell, 559 U.S. 50, 60 (2010) (cleaned up and citation omitted). This leeway officers have in how they phrase the Miranda warnings means that reviewing courts should not "examine the words employed 'as if construing a will or defining the terms of an easement.'" Powell, 559 U.S. at 60 (quoting Duckworth, 492 U.S. at 203).

Judge Moreno relied on Story's apparent understanding of his right to an attorney and the Eighth Circuit's decision in United States v. Caldwell, 954 F.2d 496 (8th Cir. 1992), to find that Sergeant Reede adequately informed Story of his right to have an attorney present during questioning. Doc. 40 at 11–15. The Caldwell decision dealt with a warning very similar to the one here. The officer in Caldwell warned the defendant that "[y]ou have a right for an attorney. If you can't afford one, one will be appointed to you." Id. at 498. Like Story, the defendant in Caldwell argued that the warning did not adequately inform him of his right to counsel before and during interrogation. Id. at 499. Because the defendant did not preserve this issue, however, the

Eighth Circuit only considered it under the plain error standard of review. Id. at 500. The Eighth Circuit found no plain error, reasoning that the officer still warned the defendant that he had the right to an attorney and that the warning did not actively mislead the defendant by, for instance, linking his right to an attorney to a future time after interrogation. Id. at 502–04. The Eighth Circuit further explained that it had never "strictly required that a defendant be explicitly advised of his right to an attorney before and during questioning," id. at 502, and that other circuits had upheld warnings that did not specifically inform the defendant of his right to have an attorney present during interrogation, id. at 503 (citing, among other cases, United States v. Lamia, 429 F.2d 373, 376–77 (2d Cir. 1970)).

Although Caldwell was decided under the plain error standard, district courts within the Eighth Circuit have applied it to uphold warnings like the one Sergeant Reede gave here. In United States v. Free, 8:19CR337, 2020 WL 6044125 (D. Neb. Oct. 13, 2020), the district court applied Caldwell when concluding that the officer's warnings were adequate even though the officer did not warn the defendant that he had a right to counsel before and during questioning. Id. at *2–3. In United States v. Nelson, No. 12-CR-2024-LRR, 2013 WL 1899832 (N.D. Iowa May 7, 2013), the district court cited Caldwell and other cases to hold that Miranda warnings were adequate where the officer informed the suspect that he had the right to an attorney and that the court would give him one if he couldn't afford it, but never explained that the right to counsel applied before and during interrogation. Id. at *4–5. And in United States v. Wright, No. 07-104 (JRT/AJB) 2008 WL 141772 (D. Minn. Jan. 14, 2008), the district court applied Caldwell to hold that Miranda warnings were sufficient where the officer advised the defendant of her right to an attorney, but did not advise her of her right to have counsel present during questioning. Id. at *3.

The Second, Third, Fourth, and Seventh Circuits have also upheld Miranda warnings similar to the one Story received. United States v. Warren, 642 F.3d 182, 185–87 (3d Cir. 2011) (holding that a warning that the suspect had the right to an attorney and that one would be appointed "before any questioning" if the suspect wished satisfied Miranda even though there was no express warning of the right to counsel during questioning); United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996); United States v. Adams, 484 F.2d 357, 361–62 (7th Cir. 1973) (holding that officer's warning that the suspect had "the right to remain silent, right to counsel, and if [he didn't have] funds to have counsel, that the court will see that [he is] properly defended" satisfied Miranda); United States v. Lamia, 429 F.2d 373, 376–77 (2d Cir. 1970).

In Lamia, for instance, the police warned the defendant that "he need not make any statement to [the police] at that time, that any statement he would make could be used against him in court; he had a right to an attorney, if he wasn't able to afford an attorney, an attorney would be appointed by the court." 429 F.2d at 374–75. The Second Circuit concluded that this warning was not deficient for failing to advise the defendant that he had the right to the presence of an attorney during questioning:

> [The defendant] had been told without qualification that he had the right to an attorney and that one would be appointed if he could not afford one. Viewing this statement in context, [the defendant] having just been informed that he did not have to make any statement to the agents outside of the bar, [the defendant] was effectively warned that he need not make any statement until he had the advice of an attorney.

Id. at 376–77. The Fourth Circuit in Frankson reached a similar conclusion, holding that the officer's warning—"you have the right to an attorney. If you cannot afford an attorney, the Government will get one for you"—satisfied Miranda because it "communicated to [the defendant]

that his right to an attorney began immediately and continued forward in time without qualification." 83 F.3d at 82 (cleaned up).

The reasoning in Caldwell, Lamia, Frankson, and the other cases just discussed persuade this Court that Sergeant Reede's warning reasonably conveyed Story's right to have an attorney present before and during questioning. As in Caldwell, Lamia, and Frankson, Sergeant Reede warned Story that he had the right to an attorney immediately after advising him that he had the right to remain silent and that anything he said could be used against him in court. Sergeant Reede did not qualify the right to counsel and did not suggest that it wouldn't apply until some later time. A reasonable suspect in Story's position would have understood not only that he had an absolute right to remain silent, but also that he had a right to counsel at that point.

Story argues, however, that Caldwell is not binding here because it was decided under the plain error standard of review. He points out that some federal courts of appeal have read Miranda as requiring the police to specifically warn a suspect that he has the right to the presence of an attorney during interrogation. Bridgers v. Dretke, 431 F.3d 853, 859 (5th Cir. 2005) (noting circuit split on this issue). Regardless of the standard of review in Caldwell, the Eighth Circuit has never held that Miranda requires that a defendant "be explicitly advised of his right to an attorney before and during questioning." 954 F.2d at 502. And the Supreme Court in Miranda seemed to approve of a warning that did not specifically inform defendants that they have the right to an attorney before and during questioning. The Sixth Circuit explained this nicely:

> Miranda, it bears reminding, merely required that a defendant be informed of his right to 'the presence of an attorney.' To be sure, Miranda clarified that 'presence' includes the right to consult with an attorney before and during questioning. But Miranda did not require a warning exactly to that effect. Case in point: Miranda acknowledged that the warnings employed by the FBI at the time of its decision were 'consistent with the procedure which we delineate today.' And those warnings, while advising of

10

> the right to counsel, conspicuously did not state expressly that counsel may be present during interrogation.

United States v. Clayton, 937 F.3d 630, 639 (6th Cir. 2019) (internal citations omitted); see also Warren, 642 F.3d at 184–85 (noting Miranda's endorsement of the FBI warnings used at the time and concluding that it therefore "cannot be said that the Miranda court regarded an express reference to the temporal durability of [the right to counsel] as elemental to a valid warning").

This Court's holding that Story received adequate Miranda warnings does not mean that officers shouldn't strive to do better. Story's Fifth Amendment challenge to his statements could have been avoided if the officer here had simply read Story his Miranda rights from a printed form, including advising him of the right to have counsel present during questioning, instead of reciting them from memory as the officer did. This Court encourages officers to inform suspects that they have the right to speak with a lawyer before questioning and the right to have the lawyer with them during questioning.

### III.  Conclusion

For the reasons stated above, it is hereby

ORDERED that Story's Motion to Suppress, Doc. 27, and supplement, Doc. 37, are denied. It is further

ORDERED that the Report and Recommendation, Doc. 40, is adopted.

DATED this 15th day of April, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE